**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| OCEANA, INC.<br>1350 Connecticut Avenue NW, Fifth Floor<br>Washington, D.C. 20036<br><br>*Plaintiff*<br><br>v.<br><br>NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION<br>United States Department of Commerce<br>Room 5128<br>1401 Constitution Avenue, NW<br>Washington, D.C. 20230<br><br>NATIONAL MARINE FISHERIES SERVICE<br>Department of Commerce<br>Room 14555<br>1315 East-West Highway<br>Silver Spring, MD 20910<br><br>*Defendants*. | ) | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff Oceana brings this case to remedy violations of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, by Defendants the National Marine Fisheries Service and National Oceanic and Atmospheric Administration (collectively "the Fisheries Service"). The violations arise out of the Fisheries Service's continuing failure to respond to Oceana's FOIA requests.

2. In April 2017, the Fisheries Service issued a Final Rule implementing Amendment 5b to the Highly Migratory Species ("HMS") Fishery Management Plan. 82 Fed. Reg. 16,478 (April 4, 2017). The Final Rule was meant to reduce the bycatch and mortality of dusky sharks, a species that has been overfished for over a decade, in order to allow the species

to recover to a healthy level. However, in the Final Rule, the Fisheries Service did not correctly estimate the number of dusky sharks currently being killed as bycatch, preventing the agency from rationally determining the amount by which it needed to reduce the number of dusky sharks being killed to rebuild the population. The Fisheries Service also ignored data from a number of fisheries that continue to catch and kill dusky sharks in evaluating alternatives for its Final Rule.

3. Oceana filed three FOIA requests with the Fisheries Service, an agency of the National Oceanic and Atmospheric Administration ("NOAA"), on April 26, 2017, seeking records to enable Oceana to analyze the basis for and impact of the Final Rule and to disseminate the information to the public. The records sought in the FOIA requests are related to Oceana's advocacy and public education missions to support protecting the dusky shark population. The Fisheries Service failed to provide Oceana determinations on its FOIA requests within the time required under FOIA and have not to date provided Oceana any determinations on its requests.

4. Although the Fisheries Service has provided Oceana a small, partial release of responsive records, the agency continues to unlawfully withhold the information sought by Oceana. The Fisheries Service has provided Oceana limited information on additional responsive records in their possession. By failing to provide the requested records, the Fisheries Service is actively impeding Oceana's access to government information and blocking its ability to carry out its organizational mission.

5. Having constructively exhausted its administrative remedies with the Fisheries Service, Oceana now turns to this Court to enforce FOIA's guarantee of public access to agency records and to remedy the Fisheries Service's withholding of that access. Accordingly, Oceana asks this Court to declare that the Fisheries Service has violated FOIA by failing to make determinations on Oceana's FOIA requests and by withholding the requested records, to order

Defendants to immediately provide Oceana with legally compliant responses to its outstanding record requests, to order Defendants to promptly provide Oceana all responsive records, and to grant other appropriate relief, including attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA).

7. Venue properly vests in this District pursuant to 5 U.S.C. § 552(a)(4)(B) because Oceana resides in this District. Venue also properly vests in this District pursuant to 28 U.S.C. § 1391(b) and (e)(i) because the Defendants are officers or employees of the United States and reside in this District.

8. This Court has authority to grant the requested relief in this case pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B), (E), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

## PARTIES

9. Plaintiff Oceana, Inc. is a non-profit, international conservation organization dedicated to maintaining and protecting the world's oceans, including the northwest Atlantic, the Gulf of Mexico, and the Caribbean. Oceana's mission includes making oceans vibrant and healthy by obtaining protection and conservation for Atlantic marine ecosystems and wildlife, like sharks. Oceana has over 720,000 members and supporters worldwide, including over 260,000 members and supporters in the Atlantic, Gulf, and Caribbean coastal states and territories. The Fisheries Service has appointed marine scientists from Oceana to serve on the HMS Fishery Management Plan Advisory Panel on several occasions, including most recently from 2009 through 2011 and from 2014 to 2016. Oceana's efforts concerning dusky sharks

include filing numerous public comments regarding the species to the Fisheries Service and filing litigation to protect the dusky shark, *Oceana v. Pritzker*, No. 1:15-cv-01824-CRC (D.D.C. filed Oct. 27, 2015). Oceana also alerts its membership on issues involving the protection of dusky sharks through a webpage, a blog series, and written reports. Oceana's headquarters is located in Washington, D.C. It has offices or staff in North Carolina, South Carolina, Florida, New York, Massachusetts, California, Oregon, and Alaska, in addition to the District of Columbia; as well as worldwide offices in Madrid, Spain; Brussels, Belgium; Copenhagen, Denmark; Geneva, Switzerland; Belmopan, Belize; Santiago, Chile; Manila, Philippines; Brasilia, Brazil; Mexico City, Mexico; and Toronto, Canada.

10. Defendant NATIONAL MARINE FISHERIES SERVICE is an agency of the U.S. Department of Commerce that has been delegated the responsibility to manage the highly migratory species fishery under the authority of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"). 16 U.S.C. §§ 1801 *et seq.* The Fisheries Service is the United States government agency with primary responsibility to ensure that the requirements of the Magnuson-Stevens Act are followed and enforced, including the requirements to implement annual catch limits, accountability measures, and others actions necessary to end overfishing and rebuild overfished populations of fish. The Fisheries Service is in possession and control of the records that Oceana seeks.

11. Defendant NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION is an agency of the U.S. Department of Commerce with supervisory responsibility for the Fisheries Service. NOAA administers and oversees FOIA requests made to the Fisheries Service. NOAA is in possession and control of the records that Oceana seeks.

**STATUTORY BACKGROUND**

12. FOIA's basic purpose is to ensure government transparency and the expeditious disclosure of government records. FOIA creates a statutory right of public access to agency records by requiring that federal agencies make records available to any person upon request. 5 U.S.C. § 552(a)(3)(A).

13. FOIA imposes strict deadlines on federal agencies to respond to requests. FOIA requires an agency to issue a final determination resolving an information request within 20 working days from the date of the request's receipt and to immediately notify the requester of the agency's determination and the reasons therefore. *Id.* § 552(a)(6)(A)(i).

14. Issuing a final determination requires the agency to "(i) gather and review the documents; (ii) determine and communicate the scope of the agency's documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013); *see* 5 U.S.C. § 552(a)(6)(A)(i).

15. An agency may extend this 20-day period only in "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), and only for a maximum of ten working days. *Id.* § 552(a)(6)(B)(i); *see also* 15 C.F.R. § 4.6(b), (d).

16. Agencies are required to provide "an estimated date on which the agency will complete action on the request" whenever a request will take more than ten days to resolve. 5 U.S.C. § 552(a)(7)(B). Agencies extending the period for unusual circumstances must, when providing notice of the extension, provide "the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i); *see also* 15 C.F.R. § 4.6(d)(1).

17. The agency must then make the requested records "promptly" available. 5 U.S.C. § 552(a)(3)(A). In so doing, the agency must make reasonable efforts to search for records in a manner that is reasonably calculated to locate all records responsive to the FOIA request. *Id.* § 552(a)(3)(C), (D).

18. The agency may withhold from production the limited classes of records exempted under 5 U.S.C. § 552(b). For any record withheld, the agency bears the burden of proving that one of the statutory exemptions applies. *Id.* § 552(a)(4)(B). Even if some information is exempt from disclosure, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Id.* § 552(b).

19. An agency's failure to comply with FOIA's deadlines constitutes a constructive denial of the request, and the requester's administrative remedies are deemed exhausted for purposes of litigation. *Id.* § 552(a)(6)(C)(i).

**STATEMENT OF FACTS**

20. On April 4, 2017, the Fisheries Service issued a Final Rule for Amendment 5b to the HMS Fishery Management Plan. The agency produced a related final Environmental Impact Statement under the National Environmental Policy Act in February 2017, which evaluated alternatives for dusky shark management and selected preferred alternatives for Amendment 5b.

21. The HMS Division of the Fisheries Service collects observer data and fisher's self-reported logbook data for boats in the HMS fishery using both pelagic longline gear and bottom longline gear. It utilizes those data to monitor bycatch in the HMS fishery, including the bycatch of dusky sharks.

22. On April 26, 2017, Oceana submitted three FOIA requests to the Fisheries Service seeking reports reflecting dusky shark bycatch and records related to observer and logbook data

and reports. The first request sought all documents reflecting dusky shark bycatch and relating to observer and logbook data and reports, as well as the number of vessels permitted to land sharks in two sectors of the HMS fishery—the HMS pelagic bottom longline and shark bottom longline sectors. The second request sought all reports reflecting dusky shark bycatch and documents relating to observer and logbook data and, as well as the number of vessels permitted to land sharks in two other fisheries—the Gulf of Mexico reef fish fishery (using bottom longline and vertical line gear) and the Southeastern Atlantic snapper-grouper fishery (using bottom longline and vertical line gear). The third request sought all documents related to observer and logbook data used to estimate dusky shark bycatch in the Fisheries Service's National Bycatch Reports.

23. The three requests specified that any responsive documents or other material could be produced in aggregated format, to the extent that providing individualized data on fishing boats or permits would implicate confidentiality concerns. The requests also specified that material readily available on the Fisheries Service's website, including observer reports from the HMS fishery (*i.e.*, "Characterizations of the Shark Bottom Longline Fishery: 2014", NOAA Technical Memorandum NMFS-SEFSC-677), were not included in the request and need not be produced.

24. Oceana's FOIA requests further the organization's objectives to end overfishing and inform its members and the public about conservation and management of dusky shark bycatch.

25. On May 4, 2017, Oceana filed a federal lawsuit challenging the Fisheries Service's decision to adopt Amendment 5b because it failed to end overfishing or rebuild the

dusky shark population. *Oceana, Inc. v. Ross*, No. 1:17-cv-00829-CRC (D.D.C. filed May 4, 2017).

26. On May 18, 2017, the Fisheries Service notified Oceana that the agency had granted Oceana's fee waiver requests. *See* 5 U.S.C. § 552(a)(4)(A)(i); 15 C.F.R. § 4.11(l).

27. On May 19, 2017, Oceana received a form email from the Fisheries Service acknowledging receipt of the requests and assigning the requests tracking numbers: DOC-NOAA-2017-001092 (requesting documents related to fishery data in HMS fishery), DOC-NOAA-2017-001093 (requesting documents related to fishery data used in National Bycatch Reports), and DOC-NOAA-2017-001094 (requesting documents related to fishery data in Gulf of Mexico and Southeast Atlantic fisheries). The acknowledgement did not indicate the scope of the documents the Fisheries Service would produce, nor did it indicate any planned withholdings or exemptions.

28. The due date for the Fisheries Service to issue determinations on Oceana's FOIA requests was no later than June 19, 2017, under 5 U.S.C. § 552(a)(6)(A)(i).

29. On June 16, 2017, the Fisheries Service sent Oceana a letter regarding each request, stating it was invoking the ten working day-extension allowed for unusual circumstances under 5 U.S.C. § 552(a)(6)(B)(i) and 15 C.F.R. § 4.6(b), (d). The Fisheries Service stated that it anticipated providing interim releases for all three requests on July 3, 2017. None of the letters requested a new due date for final determinations (beyond the ten-day extension) nor did they indicate the scope of the documents the Fisheries Service would produce or any planned withholdings or exemptions.

30. Under 5 U.S.C. § 552(a)(6)(A), the new due date for the Fisheries Service to issue determinations was July 5, 2017.

31. On June 19, 2017, Oceana responded to the letters via email, asking for the date by which the Fisheries Service anticipated completing production for the requests and for a schedule of anticipated interim release dates, as applicable.

32. On June 26, 2017, Oceana and the Fisheries Service discussed the production schedule for the requests over the phone. On the call, the Fisheries Service was unable to provide any definitive dates for final determinations, interim releases, or final production for the three requests. Instead, the Fisheries Service requested that Oceana narrow its requests by date ranges and identify which requests should be given a higher priority.

33. On June 28, 2017, Oceana sent the Fisheries Service an email to provide additional information regarding the three requests and limiting the requests by date range and fishery. Oceana also identified which records were a higher priority and which were a lower priority.

34. On July 3, 2017, Oceana received an email from the Fisheries Service stating that the Fisheries Service needed to extend the timeline for its first interim production due to the unusual work week resulting from the July 4th holiday. The Fisheries Service stated it would provide the first interim production on July 6, 2017—one day after the Fisheries Service's statutory deadline for issuing determinations on the requests.

35. On July 6, 2017, the Fisheries Service sent Oceana letters providing first interim releases for FOIA request numbers DOC-NOAA-2017-001092 and DOC-NOAA-2017-001094. The Fisheries Service did not include any documents with its letters. The Fisheries Service simply provided hyperlinks to preexisting information on its website. The Fisheries Service provided hyperlinks to two Technical Memoranda reflecting the characterization of the shark bottom longline fishery observer program from 2009 and 2015, both of which were previously

readily available on the Fisheries Service's website. Neither of those hyperlinks were responsive to Oceana's FOIA requests because the requests stated that all Technical Memorandum available on the Fisheries Service's website were not included as part of the request. The letters also included a hyperlink to a Fisheries Service website listing permit numbers for each fishery. In the letters, the Fisheries Service did not indicate the full scope of the documents the Fisheries Service would produce in response to either request nor any planned withholdings or exemptions. The Fisheries Service did not produce an interim release for request number DOC-NOAA-2017-001093.

36. The same day, July 6, 2017, Oceana spoke to the Fisheries Service by phone regarding the requests. On that call and in a follow-up email that the Fisheries Service sent the same day, the Fisheries Service stated that it would "strive" to complete production for request numbers DOC-NOAA-2017-001092 and DOC-NOAA-2017-001094 by the end of July and anticipated completion of all three requests by the end of August.

37. By the end of July 2017, Oceana had received no additional documents or further correspondence from the Fisheries Service in response to the requests.

38. On August 3, 2017, Oceana sent the Fisheries Service an email noting that production of two of the requests had been expected by the end of July and asking when Oceana could expect to receive completed production.

39. On August 4, 2017, the Fisheries Service sent Oceana an email stating that it now anticipated production of records responding to request numbers DOC-NOAA-2017-001092 and DOC-NOAA-2017-001094 by late August.

40. After receiving no further updates or documents, Oceana again emailed the Fisheries Service on August 17, 2017. The Fisheries Service responded that the agency hoped to

have more information later that week.

41. After receiving no further documents, Oceana emailed the Fisheries Service again on August 30, 2017, asking when Oceana could expect the completed production for the three requests.

42. On August 30, 2017, the Fisheries Service emailed Oceana, stating for the first time that the Fisheries Service would not provide any logbook data purportedly due to confidentiality concerns. The Fisheries Service stated it could provide aggregated data. Oceana already had asked in its original requests that aggregated data be produced to the extent confidentiality was an issue. The Fisheries Service requested Oceana to further narrow the logbook information requested, despite the fact that Oceana had already narrowed its request for logbook data by date range, fishery, and priority two months earlier, on June 28, 2017. The Fisheries Service further stated that it could not guarantee a final date for production due to complications from Hurricane Harvey.

43. During a telephone conference on September 7, 2017, the Fisheries Service stated that it had received documents from its Galveston laboratory related to data from the Gulf of Mexico reef fish observer program that it would produce shortly in response to request number DOC-NOAA-2017-001094. The Fisheries Service stated that it was in the process of collecting observer data from the HMS shark bottom longline and pelagic longline sectors in response to request number DOC-NOAA-2017-001092, and that it expected to finish production of those documents in the next three weeks. The Fisheries Service stated that it was in the process of collecting logbook data from all three fisheries (HMS, Gulf of Mexico reef fish, and South Atlantic snapper/grouper) in response to request numbers DOC-NOAA-2017-001092 and DOC-NOAA-2017-001094. The Fisheries Service stated it expected to complete production on those

two requests in the next three weeks. Finally, the Fisheries Service stated that it was reviewing an interim set of emails in response to request number DOC-NOAA-2017-001093 and that it expected to produce those emails in the next two weeks.

44. On September 19, 2017, the Fisheries Service released two additional documents in response to request number DOC-NOAA-2017-001092. One document was a scientific paper describing observer data collected in the Gulf of Mexico reef fish fishery (using bottom longline and vertical line gear) from 2006–2009. The second document reflected a two-page table of sharks observed caught in several unspecified fisheries in the Gulf of Mexico: using "logline [sic]," bandit reel, hook timer, buoy, and spearfishing gear. This second document was not responsive to any of Oceana's FOIA requests as it did not reflect data from the Gulf of Mexico reef fish fishery using bottom longline and vertical line gear, as requested. The Fisheries Service also indicated that the agency was still in the process of reviewing emails but was unable to produce any emails at that time.

45. On September 26, 2017, the Fisheries Service sent Oceana an email stating that the agency was proceeding with the email review and would get those documents to Oceana "as soon as possible." The Fisheries Service also stated it was going to be working to obtain pelagic longline data and other information from its Galveston office.

46. On October 12, 2017, Oceana and the Fisheries Service had a conference call in which the Fisheries Service stated it would provide responsive emails the week of October 15, 2017.

47. The Fisheries Service did not produce the responsive emails by October 15, 2017. On October 24, 2017, Oceana sent the Fisheries Service an email inquiring when Oceana should expect to receive the promised emails and other forthcoming documents. The Fisheries Service

responded, on October 26, 2017, that the logbook data aggregation was complete and the data were being processed for release, but did not provide any further updates regarding the emails or other documents.

48. On November 8, 2017, the Fisheries Service sent Oceana a one-page document reflecting a table of the number of sharks reported by fishers to the "discard logbook program" in the Gulf of Mexico reef fish (using bottom longline and vertical line gear) and the South Atlantic snapper/grouper fishery (using bottom longline and vertical line gear) during January 2008 to December 2016. However, the table did not break down the discards by year or explain if it reflected all dusky shark bycatch reported in logbooks for those fisheries during that time period. Oceana requested additional information and clarification from the Fisheries Service, but the Fisheries Service never responded. The Fisheries Service did not provide any logbook information or documents related to the HMS fishery.

49. On November 17, 2017, Oceana spoke to the Fisheries Service by phone. The Fisheries Service again stated it was continuing to process Oceana's requests, but could not provide any additional responses at that time.

50. Oceana received no further correspondence from the Fisheries Service for the next five months.

51. On March 12, 2018, Oceana received a letter by email, attaching a "third interim release" in response to all three requests. However, the letter was dated November 3, 2017, and only included one document—the exact same document that the Fisheries Service provided Oceana on November 8, 2017. The letter stated that the Fisheries Service would "follow up with [Oceana] shortly on the next interim release."

52. Oceana has received no further correspondence or documents from the Fisheries

Service to date.

53. In total, Oceana has only received two purportedly responsive documents in response to its three FOIA requests: a one-page table of sharks reported in the "discard logbook program" and a scientific paper discussing observer data. The Fisheries Service has also provided a two-page table of shark numbers observed in various fisheries and hyperlinks which are not responsive to any of Oceana's requests. Oceana has not received all the responsive records or the reasonably segregable portions of non-exempt responsive records to date.

54. The due date for the Fisheries Service's FOIA determinations remains July 3, 2017.

55. While the Fisheries Service acknowledged receipt of the FOIA requests and granted the fee waivers, the Fisheries Service has failed to substantively respond to Oceana's FOIA requests. None of the Fisheries Service's communications indicated the scope of the documents it would produce. Nor did any of these communications include information on planned withholdings or exemptions. The Fisheries Service thus never provided Oceana with the determinations required by FOIA and the governing regulations—more than ten months after acknowledging receipt of the requests and initially granting the fee waivers, more than nine months after the statutory due date for issuing determinations, and more than eight months after the agreed-upon extended due date for issuing determinations.

## CLAIMS FOR RELIEF

### Count I – Failure to Make Determinations on FOIA Requests, 5 U.S.C. § 552(a)(6), (7)

56. The allegations made in all preceding paragraphs are realleged and incorporated by this reference.

57. NOAA and the Fisheries Service are "agencies" under FOIA. 5 U.S.C. § 552(f)(1). NOAA and the Fisheries Service have possession and control of the requested records.

58. The Fisheries Service was required to provide determinations within 20 working days on Oceana's FOIA requests, dated April 26, 2017. *Id.* § 552(a)(6).

59. The Fisheries Service was required to provide "estimated date[s] on which the agency [would] complete action on the request[s]." *Id.* § 552(a)(7)(B); *accord id.* § 552(a)(6)(B)(i).

60. The Fisheries Service violated FOIA by failing to provide estimated date[s] by which they would complete action on Oceana's April 26, 2017 FOIA requests or to make any of the other findings required in a FOIA determination. *Id.* § 552(a)(6)(B)(i), (7)(B); *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188.

61. Oceana agreed to extend the Fisheries Service's deadline to respond to Oceana's FOIA requests from June 19, 2017, to July 3, 2017. Oceana has not agreed to any further extensions. Even so, the Fisheries Service has not issued determinations on Oceana's FOIA requests, nearly nine months after the statutory deadline and more than eight months after the agreed-upon extended deadline.

62. Oceana has constructively and fully exhausted all administrative remedies required by FOIA. *Id.* § 552(a)(6)(A), (C).

63. The Fisheries Service violated FOIA by failing to make the required determinations within 20 working days in response to Oceana's April 26, 2017 FOIA requests. *Id.* § 552(a)(6).

**Count II – Failure to Respond to FOIA Requests, 5 U.S.C. § 552(a)(3), (b)**

64. The allegations made in all preceding paragraphs are realleged and incorporated by this reference.

65. FOIA requires the Fisheries Service to process records requests and promptly provide the requested records or the reasonably segregable portion of the requested records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3), (b).

66. The Fisheries Service has provided Oceana only two purportedly responsive documents, which is a small subset of the requested records. The Fisheries Service has not claimed that any of the records they have not yet provided are exempt from disclosure. Therefore, the interim communications from the Fisheries Service do not constitute the reasonably segregable portions of the requested records not subject to a FOIA exemption.

67. The Fisheries Service has acknowledged it is in possession of additional responsive records they have not provided to Oceana to date.

68. The Fisheries Service has not provided Oceana all the requested records. The Fisheries Service have not provided Oceana the reasonably segregable portions of the requested records not subject to a FOIA exemption.

69. The Fisheries Service has violated FOIA by failing to promptly provide the responsive records or the reasonably segregable portions of lawfully exempt responsive records to Oceana. *Id.*

**REQUEST FOR RELIEF**

WHEREFORE, Oceana prays that this Court:

1. Declare that the Fisheries Service failed to make timely determinations on Oceana's records requests in violation of FOIA, 5 U.S.C. § 552(a)(6), (7);

2. Declare that the Fisheries Service failed to promptly provide records in response


to Oceana's information requests in violation of 5 U.S.C. § 552(a)(3), (b);

3. Order the Fisheries Service to immediately provide determinations on Oceana's FOIA requests, as required by FOIA;

4. Order the Fisheries Service to conduct searches that are reasonably calculated to locate all records responsive to Oceana's FOIA requests, as required by FOIA;

5. Order the Fisheries Service to provide Oceana all responsive records or the reasonably segregable portions of lawfully exempt records, as required by FOIA, within ten days of this Court's order;

6. Maintain jurisdiction over this action until the Fisheries Service is in compliance with FOIA and every order of this Court;

7. Award Oceana its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

8. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 21st day of March, 2018.

*/s/* Stephen D. Mashuda

Stephen D. Mashuda (DC Bar No. WA0005)
Christopher D. Eaton (*pro hac vice* pending)
EARTHJUSTICE
705 Second Ave., Suite 203
Seattle, WA 98104
206-343-7340 Telephone
206-343-1526 Fax
smashuda@earthjustice.org
ceaton@earthjustice.org

Brettny Hardy (*pro hac vice* pending)
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000 Telephone
415-217-2040 Fax
bhardy@earthjustice.org

*Attorneys for Plaintiff Oceana*